UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CREE, INC.,

        Petitioner,

    v.                                  Case No. 16-cv-1508-pp

BHP ENERGY MEXICO S.DE R.L. DE C.V.,

        Respondent.

---

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 71), GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT (DKT. NO. 79), COMPELLING ARBITRATION, AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 65)**

---

On July 18, 2018, the court heard oral argument on the petitioner's motion for sanctions against BHP Energy Mexico S. De R.L. De C.V. ("BHP") and Alan Barson for willful evasion of service, dkt. no. 65, and motion for default judgment against BHP, dkt. no. 71. The court granted the motion for default judgment, and instructed the petitioner to submit a proposed order. On July 23, 2018, the petitioner filed the proposed order, along with a second motion for entry of default judgment. Dkt. No. 79. Attorney Mark Costello, who represents co-respondent BHB Energy LLC ("BHB")and non-party Alan Barson, filed an objection to the petitioner's proposed language. Dkt. No. 80. The court issues this order granting default judgment, grants the motion for sanctions with respect to BHP, and denies the motion for sanctions regarding Alan Barson.

1

## I.  Background

In February of 2015, BHP and BHB filed a lawsuit in the Fifth Civil Court in the Federal District of Mexico against Cree, Inc. ("Cree") and Rocava S.A. de C.V., alleging theft of business opportunities and breach of an exclusivity agreement. Dkt. No. 2-2; 68 at 1. Alan Barson signed the complaint as BHP's "Chairman of the Board of Managers" and BHB's "Attorney-at-Fact." Dkt. No. 2-2.

On November 10, 2016, Cree filed a petition to compel arbitration and to stay litigation against BHB and BHP. Dkt. No. 1. Cree, a lighting manufacturer, wanted to terminate its relationship with BHB and BHP, who sell Cree's products in Mexico. Id. Cree's purchase order forms, order acknowledgment forms and terms and conditions (collectively referred to as the agreement) contained the following clause:

> 13. **ARBITRATION**. Any controversy or claim (including without limitation, any claim based on negligence, misrepresentations, strict liability or other basis) arising out of or relating to this Agreement or its performance or breach, which involves an amount in excess of $50,000 (exclusive of interest and costs), shall be settled by arbitrations in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce, if arbitration is demanded by either party. The location of the arbitration shall be the City of Racine, Wisconsin, if Seller's principal office is located in the United States, or Hong Kong if Seller's principal office is located outside of the United States. The decision in such arbitration shall be final and binding and any award rendered thereon may be entered in any court having jurisdiction.

Dkt. No. 2-5. Citing the Federal Arbitration Act, 9 U.S.C. §1, *et seq.*, and this clause, Cree asked this court to issue a judgment compelling BHB and BHP

(the respondents) to arbitrate their claims against Cree in Racine, and to enjoin them from continuing to prosecute Cree in Mexico. Dkt. No. 1 at 12 and 13.

The clerk's office issued the summons on November 17, 2016. On November 22, 2016, Cree's counsel docketed the affidavit of service, indicating service on BHB through its authorized agent, Stephanie Moore; the affidavit showed that Moore had accepted service on November 17, 2016, at 2:40 p.m. at 8509 New Burton Road, Dover, Delaware, 19904. Dkt. No. 9 at 3. The parties stipulated that BHB could have additional time to file its response to the petition. Dkt. No. 12. BHB timely filed a response on December 15, 2016. Dkt. No. 14. Cree filed a reply brief on January 13, 2017. Dkt. No. 21.

Meanwhile, on December 20, 2016, Cree asked for another summons for BHP. Dkt. No. 18. It made its original request on November 14, 2016, but had erroneously referred to the company as "BH**B** Energy Mexico S. de R.**I**. de C.V." Dkt. No. 6 (emphasis added). It had filed a corrected request, for "BH**P** Mexico S. De R.L. De C.V.," on November 15, 2016. Dkt. No. 8. This December 20, 2016 request, then, was Cree's second request for a summons for BHP. The clerk's office issued the second summons the same day.

In a fourteen-page order, Magistrate Judge Nancy Joseph (to whom the case was then assigned) granted Cree's petition asking to the court to compel arbitration. Dkt. No. 28. The caption of that order listed two defendants—BHB (which had responded to the petition) and BHP (which had not appeared or responded). Id. at 1. The judgment also listed both defendants in the caption. Dkt. No. 28.

On the same day that the judgment entered, Mark Costello, counsel for BHB, filed a letter, reminding the court that BHP had not been served, and opining that the court had imposed a judgment against one party over whom it didn't yet have jurisdiction. Dkt. No. 29. Counsel indicated that BHP—the party not yet served—had advised him that it would retain his firm "for the limited purpose of making a motion pursuant to FRCP 60 to vacate" the order and judgment pending service on BHP; he pointed out, however, that the court could simply correct the error itself, without such a motion. Id. He asked the court to advise the parties whether it needed a motion. Id.

The next day, Judge Joseph issued an amended judgment. Dkt. No. 30. The caption of the amended judgment listed only one defendant—BHB. It ordered judgment in favor of Cree, granting the motion to compel arbitration and stay litigation "as to BHB Energy, LLC." Id. The last sentence of the judgment read, "**IT IS FURTHER ORDERED** that this action is **DISMISSED**." Id.

Less than a month later, counsel for Cree filed a letter to the court. Dkt. No. 31. It acknowledged that the court had amended the judgment, but pointed out that the last sentence in the judgment—the sentence indicating that the "action" was "dismissed"—could be interpreted as a dismissal of the entire case. Id. He explained that, while the parties had agreed that there was no final judgment against BHP, and that the case shouldn't be dismissed as to BHP, they hadn't been able to agree on the wording of a second amended judgment that would make the status of the case as to both defendants clear. Id. BHB

4

had no objection to Cree's request that the court take a stab at crafting a second amended judgment. Dkt. No. 32.

On May 12, 2017, BHB appealed the judgment as to itself. Dkt. No. 33. Three days later, on May 15, 2017, Judge Joseph held a hearing on the issues the parties had raised with regard to the possible misinterpretation of the second amended judgment. Dkt. No. 38. The upshot of this hearing was that Judge Joseph vacated the April 18, 2017 amended judgment, and said that she would draft an order clarifying what she intended. Id. On May 23, 2017, Judge Joseph issued that clarifying order. Dkt. No. 39. She granted Cree's petition to compel arbitration and stay litigation, but clarified that the decision and order applied only to BHB, and *not* to BHP. She specifically stated that BHP had not yet been joined to the litigation. Id. at 1. She ordered Cree and BHB to proceed to arbitration as required by the arbitration clause. Id.

The next day, Cree filed a motion for order permitting alternative service of the petition on BHP. Dkt. No. 40. The motion explained that for the six months the case had been pending in the Eastern District of Wisconsin, counsel for Cree had engaged in "extensive efforts" to serve the petition on BHP, most recently by trying to serve it in Mexico as permitted under the Hague Convention. Dkt. No. 40 at 2. Cree argued that although it had not obtained a waiver of service, or an affidavit of service, for BHP, BHP "unquestionably" had actual notice of the petition. Id. In support of its actual notice argument, Cree asserted that U.S. citizen and New York attorney Alan Barson owned both BHB and BHP. Id. at 1. It asserted that Barson was the

"controlling principal" of both entities. Id. at 3. It maintained that Barson had signed the complaint in the Mexican litigation on behalf of BHP as the "Chairman of the Board of Managers." Id. It asserted that BHP's articles of incorporation and its bylaws identified Barson as its owner, president and legal representative. Id. at 4. Cree stated that Barson's own LinkedIn profile identified him as the "CEO" of BHP. Id. Cree's counsel indicated that shortly after Cree had filed the petition, counsel had spoken with Barson and asked him to accept service on behalf of BHP. Id. at 2. Counsel also had asked the firm representing BHB to accept service on BHP's behalf; the firm had declined, despite indicating that BHP was likely to retain them in connection with the petition. Id. Cree pointed out that even BHB's filings as to the original judgment argued that it would prejudice BHP. Id. Expressing its frustration over the considerable time and money it already had spent trying to serve BHP, Cree asked the court to allow it to serve BHP by alternate means—specifically, via email to Barson. Id. at 14-15.

On July 25, 2017, Judge Joseph granted Cree's motion to serve BHP using alternative means. Dkt. No. 55. She ordered that Barson—"officer of BHP Mexico"—had actual notice of the petition, and allowed Cree to serve BHP via email to Barson. Id. at 5-6.

Meanwhile, on May 26, 2017, Cree filed a Rule 7(h) motion for order to show cause why the court should not hold BHB Energy in contempt for prosecuting its litigation against Cree in Mexico. Dkt. No. 44. Barson, on behalf of BHB, filed a declaration opposing this motion. Dkt. No. 45. On June 14,

6

2017, Judge Joseph denied the motion, finding that Cree had not shown by clear and convincing evidence that BHB had violated the stay. Dkt. No. 41. She noted that BHB had not requested discovery in the Mexican litigation and instructed Cree to notify the court if that changed. Dkt. No. 51. Judge Joseph instructed BHB to provide any order from this case to "the Mexican counterpart"—presumably BHP—"so there is no confusion or risk of violation of the order." Id.

On July 27, 2017, Cree's counsel filed an affidavit that he had served the petition on Alan Barson by sending an e-mail to alan@bhpEnergy.com.mx and alan@bhbenergy.com. Dkt. No. 57. He also cc'd Mark Costello, the attorney for BHB. Four days later, Attorney Costello docketed a letter from Barson to the court, which stated that, as of June 10, 2017, he had separated from BHP, no longer served as a director, officer or employee, and could not act on behalf of the company. Dkt. No. 58. Cree filed an expedited second motion to serve BHP by email through *its* email account (rather than Barson's) and via its Facebook page. Dkt. No. 59. Judge Joseph granted that motion on August 14, 2017. Dkt. No. 62. She concluded that Cree had exercised due diligence in seeking to serve BHP through traditional means, and in trying to serve Barson via email. Id. at 2-3. She reasoned that the Hague Convention did not prohibit service via email, citing MacLean-Fogg Co. v. Fastlink Equip. Co., Ltd., 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008). Id. at 3. She concluded that BHP maintained an active Facebook page (last updated on July 27, 2017), and that BHP had actual notice of the petition. Id.

On August 15, 2017, Cree filed an affidavit from its counsel, indicating that it had effectuated service on August 14, 2018 via BHP's email and its Facebook page. Dkt. No. 63. The docket was quiet for a month.

On September 15, 2017, Cree asked the clerk to enter default, because BHP had not answered. Dkt. No. 64. The clerk entered default on September 18, 2017. Three days later, Cree filed a motion for sanctions against BHP and Barson for willful evasion of service. Dkt. No. 65. Barson filed a brief in opposition, dkt. no. 68, and Cree filed a reply, dkt. no. 70.

On November 2, 2017, Cree filed a motion for default judgment as to BHP. Dkt. No. 71. The clerk's office transferred the case to this court because BHP—not having made an appearance—had not indicated whether it consented to Judge Joseph deciding the case. Unfortunately, this court missed the re-assignment, and did not act on the pending motions. To move things along, Cree filed a motion for status conference. Dkt. No. 72. The court conducted a status conference on June 25, 2018, dkt. no. 74, at which time the court scheduled oral argument for July 23, 201. After oral argument, Cree filed a second motion for default judgment against BHP, dkt. no. 79, along with proposed language for an order granting that motion, dkt. no. 79-1. As noted, Attorney Costello—identifying himself as counsel for both BHB *and* BHP— objected to Cree's proposed language. Dkt. No. 80.

## II.     Motion for Default Judgment (Dkt. No. 71); Motion for Entry of Default Judgment (Dkt. No. 79)

Cree filed its ten-page substantive Motion for Entry of Default Judgment Against BHP Energy Mexico S. de R.L. de C.V. on November 2, 2017. Dkt. No.

71.  The one-page motion with the same title that Cree filed on July 23, 2018, after the court heard oral argument, is not substantive; it simply informs the court that Cree provided, as the court requested, proposed language for the order granting default judgment. Dkt. No. 79. The reasoning below disposes of both motions.

A.    Governing Law

Federal Rule of Civil Procedure 55 requires a two-step process before a court may enter a default judgment in favor of a plaintiff. First, the plaintiff must seek an entry of default, based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a). Second, after the clerk has entered default, the plaintiff may move for default *judgment.* Fed. R. Civ. P. 55(b). "The basic effect of an entry of default (step one) is that '[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'" VLM Food Trading Intern., Inc. v. Ill. Trading Co., 811 F.3d 247, 255 (7th Cir. 2016) (quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)). Accepting those facts as true, a court must determine whether those facts establish that the plaintiff is entitled to the relief it seeks. Id. (citing In re Catt, 368 F.3d 789, 793 (7th Cir. 2004)).

The lengthy procedural history above, and the docket, demonstrate that BHP never has answered or responded to Cree's November 10, 2016 petition to compel arbitration and stay the Mexican litigation. For that reason, the clerk entered default against BHP on September 18, 2017. That takes care of step one.

As for step two, the court must determine whether, accepting the well-pleaded facts in the complaint as true, Cree is entitled to an order compelling BHP to arbitrate in Racine, Wisconsin, and an order staying the Mexican litigation between BHP and Cree pending that arbitration.

B.    Well-Pleaded Facts, Accepted as True

The petition states that in 2008, Cree wanted to sell its lighting products in Mexico. Dkt. No. 1 at ¶11. It "was introduced" to Alan Barson, "the controlling principal of both BHB Energy, LLC and BHP Energy Mexico S. De R.L. de C.V." Id. at ¶12. BHB was a U.S. company that purchased and acted as a wholesale distributor of, among other things, electrical and lighting supplies; BHP (incorporated in Mexico in 2008) was an "affiliate of BHB US," which acted as "a Mexican importer of lighting produces purchased from Cree by BHB US." Id. at ¶¶13-14. For every purchase of Cree products, BHB would fill out and send Cree a purchase order form. ¶15. The form listed the quantity and prices of the products being ordered, stated that Cree would ship the products to BHB in the United States, stated that BHB US would pay Cree in the United States, and stated that BHP—the affiliate—would "be acting as the 'importer' of the lighting products from the United States to Mexico after their delivery to BHB US." Id. If Cree wanted to sell the products requested on the form, it would send BHB an "order acknowledgment form." Id. at ¶16. The acknowledgment form would list the products Cree agreed to sell, along with their prices, descriptions and quantities. Id. It also stated, however, that Cree's acceptance of the purchase order was conditioned on the defendants' acceptance of Cree's

"Sales Terms and Conditions," which were listed on Cree's website. Id. Those "Sales Terms and Conditions" included an arbitration clause—the one quoted in full in the background section above. Id. at ¶17. According to the petition, during the course of Cree's relationship with the defendants, Cree sent over twenty order acknowledgment forms to the defendants, and every one of them expressly incorporated the Sales Terms and Conditions—including the arbitration clause. Id. at ¶18.

The relationship between the parties started to deteriorate in 2012, when Barson began to "express[] his growing displeasure" with the fact that Cree had been selling its products to another Mexican company while it was selling to the defendants. Id. at ¶¶21-24. Barson communicated this "displeasure" on multiple occasions over the next twelve to eighteen months. Id. at ¶¶25-31. In June 2013, Cree terminated its "at will" relationship with the defendants. Id. at ¶32. But Cree agreed to allow the defendants to continue making purchases for "deals that were registered within two weeks of the June 25, 2013 [termination] that would close within six months . . . ." Id. at ¶33. Effectively, Cree agreed to a six-month wind-down. Id. In response to a request from Barson, Cree agreed to "temporarily hold off on terminating the relationship . . . ." Id. at ¶¶34-35. But things didn't improve, and so Cree notified Barson that the relationship would be ending as of March 28, 2014. Id. at ¶¶36-37. Cree confirmed this by certified letter to Barson on November 1, 2013. Id. at ¶38. In December 2014, the defendants sued Cree (as well as the other Mexican company to whom Cree

had been selling) in Mexico, alleging that Cree had wrongfully terminated the relationship. Id. at ¶¶39-40.

C.    Plaintiff's Entitlement to the Relief It Seeks

As relief, Cree asked the court to issue an order under Sections 4 and 206 of the Federal Arbitration Act, enjoining the defendants from continuing to prosecute the dispute in Mexico and requiring them to arbitrate the dispute in Racine, as required by the arbitration clause. Id. at ¶47. To show that it is entitled to that relief, Cree must show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration. Druco Rests., Inc. v. Steak n Shake Enters., Inc., 765 F.3d 776, 781 (7th Cir. 2014). Judge Joseph considered this question in detail, on its merits, when BHB opposed the petition. Dkt. No. 27. She concluded that there was a valid arbitration agreement between the parties, id. at 9-10; that the dispute in the Mexican litigation was within the scope of that agreement, id. at 10-12; and that Cree had not waived its rights under the arbitration agreement, id. at 12-13. Because the defendants specifically had opposed arbitration, she did not need to make a formal finding on the third element—whether the opposing party refused to proceed to arbitration. Id. at 7.

Judge Joseph's ruling on the substantive claim establishes the law of the case as to BHB. While she clarified her order to emphasize that it did not apply to BHP, that was not because her reasoning did not apply to BHP. Rather, she did so solely because, at the time she issued the order, BHP had not been

12

served, and had not appeared. Dkt. No. 39 at 1. That is no longer true. BHP now has been served, via email and its Facebook page. It has not answered. Applying the law cited by Judge Joseph to the well-pleaded facts of the petition, this court finds that Cree is entitled to the relief it seeks against BHP.

D.   Language of the Proposed Order

The court stated as much at the July 18, 2018 hearing on Cree's motion for default judgment against BHP, and asked Cree to submit a proposed order. Dkt. Nos. 78, 77. Cree provided the court with that proposed order as an attachment to its second motion for entry of default judgment. Dkt. No. 79-1.

On July 24, 2018, the court received a letter from Attorney Costello, objecting that the proposed order "include[d] decretal language against co-defendant, BHB Energy, LLC ('BHB') that purport[ed] to summarize but possibly expand[] the language of a prior Order of this court entered against BHB (the 'Order'). See Document 39." Id. Costello stated, "The terms of the Order were not in issue in Cree's application for a default judgment against BHP Mexico and Cree's request to revise, restate or expand the terms of the prior Order in connection with Cree's default motion against BHB Mexico is inappropriate." Id. He concluded by asking that any order this court issued contain "no decretal language relating to BHB." Id.

The court was a little bumfuzzled by this letter. It had to look up the word "decretal." According to Merriam-Webster's on-line dictionary, it means "DECREE; *especially*: a papal letter giving an authoritative decision on a point of canon law." https://www.merriam-webster.com/dictionary/decretal.

Concluding that that couldn't be what counsel meant, the court tried Black's Law Dictionary Free Online Legal Dictionary 2nd Ed. Less than helpfully, it said, "See DECKEE; OB-DEK." https://thelawdictionary.org./decretal-order. Something called "TheLaw.com Dictionary" was a little less opaque; it indicated that in chancery practice, a "decretal order" was "an order made by the court of chancery, upon a motion or petition, in the nature of a decree." https://dictionary.thelaw.com/decretal-order. It seems, therefore, that counsel is objecting to any proposed language that orders, or decrees, BHB to do anything, or perhaps, to do anything more than what Judge Joseph had ordered BHB to do.

The order Cree proposed listed both BHB and BHP in its caption. Dkt. No. 79-1 at 1. While this court is not entering default judgment against BHB, it *is* a party in the case. It is not clear to the court that that is a problem. The first paragraph of the proposed order says nothing about BHB, so the court assumes that isn't the problem. The court assumes that Attorney Costello objects to the second paragraph of the proposed order, which states that Judge Joseph's May 23, 2017 order remains in effect, and that "BHB Energy, LLC remains enjoined from pursuing relief against Cree, Inc. in any litigation or court proceeding in Mexico arising out of or relating to the parties['] distributorship relationship, including the action filed in Fifth Civil Court in the

Federal District (Mexico City) of Mexico, File 1789/2015, and any related proceedings, appeals and/or federal injunction (amparo[1]) process." Id.

In her May 23, 2017 order, Judge Joseph granted Cree's petition to compel arbitration and stay litigation. Dkt. No. 39 at 1. She referenced the petition by referring to Docket #1. Id. She then clarified that the order applied only to BHB. Id. She ordered Cree and BHB to proceed to arbitration as required in the arbitration agreements. Id.

The petition Judge Joseph granted, and referenced in her order, asked the court for an order "compelling Respondent to arbitrate in Racine, Wisconsin all of the claims that they previously asserted against Cree in the Mexican-based litigation, in accordance with the parties' arbitration clause." Dkt. No. 1 at 13, sub-paragraph (a). It asked for an order "[e]njoining Respondents and all other persons who are in active concert or participation with Respondents from pursuing relief against Cree in any litigation or court proceeding in Mexico arising out of or relating to the parties' distributorship relationship." Id. at sub-paragraph (b). Finally, it asked the court to grant Cree its costs and disbursements, including attorneys' fees. Id. at sub-paragraph (c).

Comparing the relief requested in the petition with the language in Cree's proposed order of default judgment as to BH**P**, the court does not see the basis for BH**B**'s concerns. Judge Joseph's order *does* remain in effect. This order granting default judgment against BHP has no impact on Judge Joseph's order

---

[1] According to Wikipedia—admittedly not a law dictionary—a writ of amparo is a remedy for protection of rights in certain jurisdictions. https://en.wikipedia.org/wiki/Recurso-de-amparo.

granting judgment on the merits against BHB. The petition Judge Joseph granted tracks the language Cree proposed to this court word for word as to the injunction, except that the petition's request for relief did not specify, "including the action filed in Fifth Civil Court in the Federal District (Mexico City) of Mexico, File No. 178-2015, and any related proceedings, appeals and/or federal injunction (amparo) process." The court is not sure that the more specific language is necessary—an order from this court enjoining BHP from pursuing relief against Cree in any litigation or court proceeding in Mexico arising out of or relating to the parties' distributorship relationship encompasses "the action filed in Fifth Civil Court in the Federal District (Mexico City) of Mexico, File No. 178-2015"—the actual litigation that is pending there right now, between Cree and BHP, relating to the dissolution of their relationship. Finally, the court supposes that for it to order BHB to proceed to arbitration is cumulative when Judge Joseph already has done so, and when her order remains in effect. The court will enter the order Cree proposed, with slight—and, the court believes, cosmetic—alterations.

III.    **Motion for Monetary Sanctions (Dkt. No. 65)**

After the clerk's office entered default, Cree filed a motion asking the court to impose monetary sanctions on BHP, and Barson as its principal, "to punish them for their willful and repeated efforts to avoid service of process" over a ten-month period. Dkt. No. 65. BHP has not responded to that motion. Barson—represented by BH**B**'s lawyer, Mark Costello—did object, dkt. no. 68,

16

and Cree filed a reply, dkt. no. 70. The court heard argument on this motion at the July 18, 2018 hearing. Dkt. No. 78.

A.     Standard Governing Sanctions

A district court has "the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." Ramirez v. T&H Lemont, Inc., 845 F.3d 772, 776 (7th Cir. 2016) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 46-50 (1991)). That inherent authority "includes the 'power to conduct independent investigations in order to determine whether the court has been the victim of fraud or deceit.'" United States v. Johnson, 327 F.3d 554, 561 (7th Cir. 2003) (quoting Winkler v. Eli Lilly & Co., 101 F.3d 1196, 1200 n.2 (7th Cir. 1996)). "Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." Ramirez, 845 F.3d at 776 (citations omitted). "Mere clumsy lawyering is not enough" to justify a finding of abuse of process or bad faith. Fuery v. City of Chicago, 2018 WL 3853742, at *10 (7th Cir. Aug. 14, 2018). In the Seventh Circuit, a district court's decision to dismiss a lawsuit, or enter default judgment, as a sanction under its inherent authority "need only be established by preponderance of the evidence." Ramirez, 845 F.3d at 781. "The sanction imposed should be proportionate to the gravity of the offense." Montano v. City of Chi., 535 F.3d

558, 563 (7th Cir. 2008) (citing <u>Allen v. Chi. Transit Auth.</u>, 317 F.3d 696, 703 (7th Cir. 2003)).

B.    <u>Analysis</u>

Cree has asked the court to sanction BHP and Barson. BHP, of course, is a party to the litigation. Barson is not; he is—or, as the discussion will show, perhaps *was*—a nonparty principal. It is difficult to extricate Barson from BHP, so the court will relate one set of facts as to both, and then analyze each separately for purposes of determining whether to impose sanctions.

1.    *Facts*

The complaint in the Mexican litigation was signed, or sworn, on December 5, 2014. Dkt. No. 2-2 at 99. The signatories for BHP Energy Mexico S. de R.L. de C.V. are "Alan Barson," whose title is "Chairman of the Board of Managers," and "Rina Claudia Harari Nahmad," whose title is "Vice president of the Board of Managers." Id. The signatories for BHB are the same two individuals, but both carry the title "Attorney-in-Fact." Id. The exhibits to the petition—purchase orders—show that BHB's address was 405 Tarrytown Road, Suite 1556, White Plains, NY 10607. Dkt. No. 2-3. Emails from 2012 between Barson and various Cree personnel show that Barson was using an email address of alan@bhpEnergy.com.mx. See, *e.g.*, Dkt. No. 2-8, 2-10.

Cree filed the petition in this court on November 10, 2016. Dkt. No. 1. The first summons Cree requested on November 15, 2016 was addressed to BHP c/o Barson at the White Plains, New York address. Dkt. No. 8. On November 17, 2016, only two days after obtaining the summons, Cree was able

to serve BHB at its address in Dover, Delaware. Dkt. No. 9 at 3. Service on BHP, however, turned out to be a whole other kettle of fish.

Cree started out by trying to effectuate service on Barson at 405 Tarrytown Road, Suite 1556, White Plains, New York 10607-1313, because that was the address listed on the New York attorney registration web site. Dkt. Nos. 41 at ¶8; 41-3. The process server reported, however, that as of November 18, 2016, the White Plains address was a rental mailbox at a UPS store. Dkt. No. 41 at ¶10. A year later, in the affidavit he attached to his opposition to the motion for sanctions, Barson asserted that he was unaware of efforts to serve him at that address. Dkt. No. 68-1 at ¶8. He stated that he did not live at that address, and that his actual residential address was publicly available. Id.

Next, Cree searched real estate and other databases, and found that that Barson "appeared to own a residence at 1301 Pondcrest Lane, White Plains, New York 10607." Dkt. No. 41 at ¶11. It sent the process server to that address, which turned out to be located inside a gated residential community. Id. At the entrance to the community, there was an intercom, which listed "A. Barson" in the directory. Id. "The process server made multiple attempts" to serve Barson at that address, but nobody ever answered the intercom. Id. In his affidavit filed a year later, Barson asserted that he spends "about half" of his time every year outside of the United States. Dkt. No. 68 at ¶9. He claims that it is "understandable (and likely) that Cree's process server would have been unable to effect in-hand service" on him at what he admits was his "home address in the United States." Id. He asserted that he "must assume that on

19

whatever date they attempted to serve" him, he was away, as he "frequently" was, from that address, and claims that he was not aware that Cree had tried to serve him there. Id.

Next, Cree went back to Barson's New York attorney registration profile, took the phone number listed there, and did a reverse look-up. Dkt. No. 41 at ¶12. That exercise yielded an address at 853 Broadway, New York, New York. Id. The process server headed to the lower East Side on November 18, 2016—the same day of the fruitless visit to White Plains—but Barson was not listed in the building directory and the security staff said they had never heard of him. Id. Barson says in his October 2017 affidavit that he closed the Manhattan office in 2010, six years before "the commencement of this action." Dkt. No. 68 at ¶11. He again volunteers that it is "understandable," under these circumstances, that the building security folks never had heard of him. Id.

On December 5, 2016, Cree's counsel received a phone call from Attorney Colleen Holland, a lawyer at Boylan Code LLP in Rochester, New York. Dkt. No. 41 at ¶13. Attorney Holland informed counsel that her firm, Boylan Code, had been retained by BHB in connection with the petition. Id. Counsel asked whether the firm also would be representing BHP, "as the two entities were both owned by the same principal—Alan Barson;" counsel also asked whether the firm would agree to accept service on behalf of BHP. Id. Holland did not dispute that Barson owned BHP Mexico, but said that that entity had not yet retained her firm in relation to the petition. Id. She said that she believed that because BHP was a Mexican entity, Cree might have to serve it in Mexico, in

accordance with the Hague Convention. Id. She agreed, however, to ask whether BHP would waive formal service of process. Id. She also indicated that Boylan Code was likely to represent BHP Energy Mexico after it was properly served and joined. Id. As one of its exhibits, Cree submitted a screenshot of a page of the Boylan Code website, showing "©2015 Boylan Code, LLP" in the bottom, right-hand corner, and indicating that Alan D. Barson was "Of Counsel" to the firm. Dkt. No. 41-5. Cree's counsel attests that he visited this page on or about December 6, 2017—the day after he talked with Holland. Dkt. No. 41 at ¶15. He indicates that Holland never mentioned that Barson was affiliated with the firm, and that "[s]ometime after" December 6, 2017, "Mr. Barson's profile page was taken down from the firm's website." Id.

On December 7, 2016—the day after he found Barson's page on the Boylan Code web site—counsel for Cree called the number the site listed for Barson. Id. at ¶16. A man answered, and identified himself as Alan Barson. Id. After counsel identified himself and explained his relationship to Cree, Barson confirmed that he was "principal of BHP Mexico," and that neither he nor BHP Mexico had representation in connection with the petition filed with this court. Id. Counsel told Barson that counsel believed Barson ought to be able to accept service on BHP's behalf, and offered to have someone provide Barson with the petition and summons "at a time and location in New York that would be convenient to him." Id. Counsel says that he told Barson that if Barson wouldn't agree to accept service at his convenience, counsel would have the

process server locate him in New York and serve him. Id. Barson declined to accept service. Id.

In his October 2017 affidavit, Barson says that he never held a controlling interest in BHP (although he "once" held an approximately 11% interest), and that he was "not authorized to accept service voluntarily on behalf of BHP Mexico in this litigation." Dkt. No. 68-1 at ¶5. He states that because, in filing the petition, Cree was "engaging in blatant forum shopping, commencing an illegal collateral action—this action—that will be unenforceable in Mexico," BHP didn't authorize him to voluntarily accept service on its behalf.[2] Id.

After Barson refused to accept service, Cree hired a private investigative firm to try to find Barson and serve him on behalf of BHP. Dkt. No. 41 at ¶17. On December 14, 2016, an investigator went back to the address on Broadway in Manhattan, and showed a security guard Barson's photo. Id. at ¶18. The guard recognized Barson, and said he thought Barson had moved to an office around Fifth Avenue and Fifteenth Street in the city. Id. The investigator followed up, "visit[ing] multiple addresses in that vicinity and sp[eaking] with several people in the area," but was unsuccessful. Id. Barson's October 2017 affidavit says that he was "not working or living in Manhattan at that time," and that he wasn't aware that Cree was trying to serve him there. Dkt. No 68-1 at ¶12. He says that he "ha[d] not maintained any office in New York City since

---

[2] Despite Barson's assertion, Judge Joseph had already determined, as part of her substantive decision against BHB, that Cree had not waived its right to arbitrate. Dkt. No. 27 at 13.

2010, so it is little wonder Cree was unable" to serve him in the city in December 2016. Id.

The very next day BHB filed its opposition to the petition. Dkt. No. 14. In support of the opposition, it provided a declaration from Barson, signed under penalty of perjury "under the laws of the United States," and dated December 15, 2016 in Mexico City. Dkt. No. 16.

Having hit a wall in New York, and given Barson's declaration on December 15, 2016 that he was in Mexico City, Cree started trying to serve BHP in Mexico under the Hague Convention; it hired an international litigation support firm to provide translated copies of the petition and other pleadings, and began preparation of the Hague request for service on the Central Authority in Mexico. Dkt. No. 41 at ¶¶21-22. On January 25, 2017, Cree filed the Hague request; the Central Authority assigned the matter to the 38th Civil Court in Mexico City to facilitate service on BHP. Id. On March 16, 2017, the 38th Civil Court "received letters rogatory to be served from the Central Authority." Dkt. No. 42 at ¶9.

On March 24 and again on March 27, representatives from Cree went with court officials to try to serve BHP at "addresses that were known to be potential domiciles for that entity." Id. at ¶10. Two of the addresses were for an accounting firm, which refused to accept service and denied any knowledge of BHP having offices there. Id. at ¶11. The third address was a corporate office building; there was a digital screen in the lobby that listed the tenants, one of which was BHP Mexico. Id. at ¶12. The building had private security, however,

and when the Cree representatives and court official tried to go in, they were "refused access, despite the presence of a court official and a court order directing service on BHP Mexico." Id. at ¶13.

The Cree representatives and court official tried again on March 31, 2017, going back to the office building that had shown BHP as a tenant. Id. at ¶14. A "young man" showed them some utility bills that "appeared to indicate that BHP Energy was not, in fact, a tenant there," and "coincidentally," the digital screen displaying the list of tenants was "switched off." Id. The judge had given Cree a twenty-one-day window to effectuate service, so on April 5, 2017, "the letters rogatory were returned to the Central Authority." Id. at ¶15.

Not surprisingly, Barson's October 2017 declaration has an explanation for this, as well. He says that the first address in Mexico "was BHP Mexico's accountants' fiscal address." Dkt. No. 68-1 at ¶13. He asserts that it is "common practice in Mexico to have a fiscal address at an accounting office," and says that "hundreds if not thousands of companies" have fiscal addresses at this accounting office. Id. As to the first attempt to serve BHP at the corporate office building, Barson asserts that he was not present for the exchange between the process server and security guard and cannot be responsible for the security guard. Id. at ¶14. He says, however, that "in Mexico City there are great concerns regarding security as there are in large cities everywhere," and he finds it "unfathomable" that the fact that a security guard would keep an "unauthorized visitor" out of a building could show that he, or BHP, willfully avoided service of process. Id. He says he wasn't aware that the

24

security guard turned the court official and the Cree representatives away, and that he isn't even certain he was there "at the time their process server was denied entrance." Id. Regarding the March 31 visit, when the directory was "coincidentally" switched off, Barson says he knows nothing about that, but denies that he removed or directed anyone else to remove BHP's name. Id. at ¶15.

As discussed in the default judgment section of this order, on May 24, 2017, Cree filed its motion asking Judge Joseph to allow it to serve BHP by sending an email to Barson. Dkt. No. 40. At the June 14, 2017 hearing on the objection to the petition, Judge Joseph specifically noted that the motion wasn't before her at that time because the deadline for responding was that same day—June 14, 2017. Dkt. No. 53 at 15. June 14, 2017 came and went, however, as did a few additional weeks, and no one ever responded to the motion to serve BHP by sending an email to Barson. So on July 25, 2017, Judge Joseph granted the motion. Dkt. No. 55. In doing so, she cited many of the facts recounted above.

Judge Josephs' order hit the electronic docket at 3:09 p.m. Central time on July 25, 2017—4:09 p.m. Eastern. Eighteen hours later, Attorney Costello filed a letter to Judge Joseph. Dkt. No. 56. The letter said that "[y]esterday" (July 25, 2017), counsel had forwarded a copy of Judge Joseph's order allowing alternate service to Barson. It recounts that Barson then forwarded counsel a letter that night (July 25, 2017), advising counsel that "as of June 19, 2017, he separated from BHP Mexico," and saying that Cree's Mexican counsel "were

informed of [Barson's] separation from the company." Id. Counsel attached the letter from Barson. Dkt. No. 56-1. In it, Barson stated that he was no longer a director, officer or employee of BHP as of June 19, 2017, and that he "may not" act in any official or unofficial capacity for BHP. Id. He says that he "believe[s]" that Cree's counsel in Mexico was made aware of his separation "weeks ago," but that he doesn't know whether they told Cree's Wisconsin counsel. Id. He then stated,

> As a procedural matter, I understand that all documents in this litigation must be electronically filed. However, it seems there is no one who can do that. I am not admitted to practice in Wisconsin courts, and as far as I am aware, BHP Mexico is not represented by counsel in the captioned matter. Accordingly, I have asked Mark Costello Esq. of Boylan Code to file this document as a courtesy so all can be informed of my separation from BHP Mexico.

Id.

Notably, the "separation date" Barson provided—June 19, 2017—was five days after the June 14, 2017 hearing on the motion for default judgment, during which Judge Joseph stated that she would rule on motion for alternate service once the response deadline had passed.

On July 27, 2017, Cree's counsel filed an affidavit, indicating that the previous day, he'd tried to serve the petition and summons by email at alan@bhpEnergy.com.mx and alan@bhbenergy.com. Dkt. No. 57. The first e-mail was returned as undeliverable, with a message saying, "The email address you entered couldn't be found." Counsel received no indication that the documents hadn't made it to the second address. Id.

In fact, the documents *did* make it to the second address. On July 31, 2017, the court received another letter from the prolific Mr. Barson. Dkt. No. 58. The letter was on letterhead from "law office of Alan D. Barson, 455 Tarrytown Road—Suite 1556, White Plains, New York 10607"—the rental mailbox at the UPS store where Cree had first tried to serve him over a year before. Id. at 1. This letter indignantly complained that four-and-a-half hours after Attorney Costello had filed the letter reporting that Barson had separated from BHP, Barson had received the summons and petition from Cree's counsel. Id. Barson stated, in underlined language, that he "respectfully rejected" the documents, because as he'd told everyone, he had separated from BHP. Id. In addition to reiterating that he didn't have the authority to accept anything on BHP's behalf, Barson also advised that before he separated from BHP, he was the "only American employee and fluent English speaker of BHP Mexico," and he opined that "sending litigation documents to a Mexican company without providing Spanish translations might not be a good way to apprise them of the petition since they may not be able to read it." Id. at 1-2.

Cree filed another affidavit, indicating that on July 31, 2017—the same day Barson sent his "respectful rejection" of the pleadings—Cree obtained a copy of a filing by BHP Mexico informing the Mexican court that Barson was no longer a shareholder, and that the principal and sole manager of BHP Mexico was Rina Claudia Harari Namad. Dkt. No. 60 at ¶3. BHP Energy Mexico had attached to that filing minutes of a June 19, 2017 shareholder meeting, purportedly showing that Barson sold his shares of BHP at that meeting. Id.

Cree attempted to email the petition and summons to Namad at the address she had used in her dealings with Cree (claudia@bhpenergy.com.mx). Id. at ¶4. That email was returned as undeliverable. Id. Cree had learned, however that BHP Mexico had an active website that listed a contact email of info@bhpenergy.mx, id. at ¶5, and that it had a Facebook page, last updated July 27, 2017, at https://facebook.com/BHPENERGYMEXICO, id. at ¶6.

On August 2, 2017, Cree filed a second motion to serve defendant BHP Energy Mexico via alternative means, this time by sending the petition and summons to info@bhpenergy.mx and to BHP's Facebook page. Dkt. No. 59. Judge Joseph granted the motion on August 14, 2017, finding that Cree had exercised due diligence in using traditional means. Dkt. No. 62. Cree served BHP the next day. Dkt. No. 63. There has been no response.

    1.   *Barson*

The evidence demonstrates, and the court finds, that Alan Barson has acted willfully to abuse the judicial process, and to litigate in bad faith. To say that something smells fishy about Mr. Barson is an understatement. He is a registered member of the New York State Bar, but lists as his address a UPS store that rents mailboxes. He owns (or owned, at the time Cree was trying to serve him) a house in White Plains, but claims that he rarely is there; he never has followed up that claim with the answer to the obvious question: "Well, then, where *do* you live when you're not in living in your house in White Plains?" As far back as December 5, 2016, Attorney Holland, of the Rochester, New York law firm Boylan Code, contacted Cree's counsel and indicated that

Boylan Code had been retained to represent BHB—the company whose board of managers Barson chaired. As of that date (and likely prior to that date), Barson knew that Cree had named both BHB and BHP in the petition; as the chair of the board of managers, he would have been involved in the decision to hire counsel. Indeed, the firm BHB hired was the firm where Barson himself was listed as "Of Counsel." Curiouser and curioser.

Even giving Barson the benefit of the doubt and assuming that he might not have realized that BHP had been named as a respondent when the company whose board he chaired "hired" the firm for which he was "of counsel" to represent it, that benefit evaporates as of December 7, 2016. That was the day that Cree's counsel called the phone number listed for Barson on the Boylan Code web site, and got Barson himself. Barson admitted to being a principal of BHP, and admitted that BHP didn't have counsel, but informed Cree's lawyer that he didn't own BHP and wouldn't accept service on its behalf. As of that conversation, Barson knew (and the court believes he knew before that) that Cree was trying to serve BHP. He knew that if he didn't accept service, Cree was going to keep looking for him. BHB's lawyer, Attorney Holland, even had suggested to Cree's counsel two days earlier that Cree might need to serve BHP in Mexico in accordance with the Hague Convention.

So Barson leaves Cree to fumble around in the dark until December 15, 2016, when BHB—through its local counsel *and* Mark Costello and Colleen

Holland of Boylan Code[3]—filed its twenty-six-page objection to the petition. Dkt. No. 14. Barson, who has stated that he is not admitted to the Wisconsin Bar and can't file documents on behalf of BHP, nonetheless provided a twenty-five-page declaration in support of the opposition. Dkt. No. 16. It reads like an answer to a complaint—it is combative, accusatory and makes quasi-legal arguments about Barson's views on the validity of the petition. Much of what he discusses in the declaration relates to *BHP*—the company he insists has not given him authority to accept service.

This assertion stands in stark contrast to the fact that BHP appears to have given Barson authority to sue people. In the Mexican litigation, he signed the complaint on behalf of BHP, listing himself as its "Attorney-in-Fact." Yet when Cree attempted to serve him on behalf of BHP, he claimed that he never had held a controlling interest in the company (the court does not know if this is true), that he'd once owned only an 11% share (the court does not know if this is true), and that he had no authority to accept service on BHP's behalf (the court finds this hard to believe, given that he had authority to sign complaints on BHP's behalf). The reason he gave for his inability to accept service on BHP's behalf is that the petition filed in the Eastern District of Wisconsin constituted abusive litigation. He is entitled to that opinion, as is anyone else connected with BHP (if there *is* anyone else connected with BHP). He is *not* entitled to thwart service based on that belief. The remedy for an

---

[3] Costello did not actually file a notice of appearance on behalf of BHB until February 21, 2017. Dkt. No. 25.

entity subjected to abusive litigation is for that entity to join the litigation and defend itself with that argument.

Cree tried four times (at least) to serve Barson in Mexico, once it discovered that he was in Mexico City. They tried twice at the accounting offices, the ones that Barson claims house "hundreds, if not thousands" of fiscal addresses. They tried twice at the building where BHP appears to have had an office. Barson claims that of course the private security firm wouldn't let "unauthorized visitors" into BHP's office building, conveniently neglecting that one of those "unauthorized visitors" was a court official. He claims that he doesn't even know whether he was in the building on the day security refused to let the court official in, implying that there were times when he *was* in that building. Despite the fact that Holland had suggested that Cree might have to serve BHP in Mexico, and despite the fact that Cree's counsel had told Barson directly that Cree would continue to look for him if he would not accept service on behalf of BHP, Barson insists that he had no idea Cree had come looking for him, and argues that it is silly of them to think they could have found him at any of these places. Again, he is strangely silent on the implied question of where they *could* have found him.

On May 24, 2017, Cree asked to serve BHP by alternative means. Dkt. No. 40. Two days later, Cree filed a motion asking Judge Joseph to hold BHB in contempt, asserting that it was continuing the litigation in Mexico despite the fact that she'd ordered it stayed. Dkt. No. 44. Barson was on it immediately; he provided a three-page declaration dated May 30, 2017 in Mexico City, arguing

that the litigation was proceeding against the other Mexican defendant, Rocava, and that "BHP Mexico is entitled to take discovery of Cree and Rocava . . . ." Dkt. No. 45 at ¶4. So—Barson could not accept service on behalf of BHP, but could assert BHP's rights in a "declaration"—a thinly-veiled lawyer's objection. At 8:10 a.m. on June 14, 2017, Judge Joseph docketed a notice of a hearing on that motion; the hearing was scheduled for that afternoon at 2:30 p.m. by phone. It was at that hearing that Judge Joseph indicated that once the objection deadline had passed, she was going to rule on Cree's motion to serve BHP by emailing Barson. By June 19, 2017—only five days later—there coincidentally had been a BHP board meeting, at which Barson coincidentally sold his shares. This didn't come to light, however, until July 25, when Judge Joseph granted the motion allowing Cree to serve BHP by emailing Barson. Within eighteen hours of Judge Joseph issuing her order, Barson had fired off a letter for Costello to file, reporting that he no longer owned any shares of BHP and that he had no authority to act on its behalf.

At this point, Barson monitored the litigation minute by minute. At 8:07 a.m. on July 31, 2017, Costello filed the indignant letter from Barson, protesting that Cree had served him by email four and a half hours after Judge Joseph issued her order. Dkt. No. 58. He also took the opportunity to goad Cree for failing to serve BHP with Spanish-language versions of the documents, despite the fact that Cree was sending the documents to *Barson*, who has repeatedly demonstrated that he speaks English.

Alan Barson has known, since December 7, 2016 at the outside, that Cree was trying to serve BHP, an entity with whom he was affiliated, and in whom he owned stock. He has refused to avail himself of service, or to advise Cree as to who did have the authority to accept service. He has participated in the litigation (frequently on BHP's behalf, either through Costello or directly), while blocking Cree's ability to formally join BHP in the litigation. That is abuse of the judicial process. That is bad faith.

The court strongly suspects that Barson was a principal of BHP, up to the time he allegedly sold his shares. But he himself is not a defendant. Cree did not sue Barson. And the court does not have any evidence that he was authorized to accept service on BHP's behalf (although there is circumstantial support for that assumption). The remaining question is whether the court has the authority to impose sanctions on a *non-party*.

The Seventh Circuit has affirmed imposition of sanctions on a corporation's lawyer for vexatious conduct, including evasion of service. <u>Fox Valley Const. Workers Fringe Ben. Funds v. Pride of Fox Masonry and Expert Restorations</u>, 140 F.3d 661, 666 (7th Cir. 1998). But that attorney purported to represent the corporation. Although his behavior indicates otherwise, Barson has never held himself out to be BHP's lawyer in this case, admits that he is not licensed in Wisconsin and has not been admitted to practice before the Eastern District. Even the fact that he identified himself as BHP's "Attorney-in-Fact" on the Mexican complaint does not mean that he was authorized to act as BHP's attorney in the sense that we understand an attorney's role in

American legal parlance. See, *e.g.*, www.yucatancompass.com/what-you-should-know-article/29/power-of-attorney-and-mandate-in-mexico (stating that an attorney-in-fact is the title of a person granted certain authority under a power of attorney); https://uk.practicallaw.thomsonreuters.com/w-012-3577?transitionType=Default&contextData=(sc.Default)&firstPage=true&comp=pluk&bhcp=1 (describing different types of powers of attorney, and the authority they give the attorney-in-fact).

The court also has affirmed the sanction of default judgment against a defendant who avoided service. Hal Commodity Cycles Management Co. v. Kirsch, 825 F.2d 1136, 1139 (7th Cir. 1987). But the sanctioned defendant in that case was a named party to the litigation; Seventh Circuit law is clear that a district court has inherent authority to sanction a *party*.

Cree argues that the court has the authority to sanction a non-party, and cites Helmac Products Corp. v. Roth (Plastics), 150 F.R.D. 563, 565 (E.D. Mich. 1993) in support of that argument. In Helmac, the district court found that the principal shareholder and chief executive officer of the defendant had destroyed discovery documents. Id. at 564. The CEO was not a named party to the suit. The Michigan court concluded, following the Supreme Court's decision in Chambers v. NASCO, 501 U.S. 32 (1991)—in which the Supreme Court affirmed a district court's sanction against someone who eventually became a party, for things that person had done before the lawsuit was filed, that district courts could sanction non-parties not subject to court orders, subject to "rigorous" application of a two-part test. Id. at 568. First, the court held, the

34

non-party must have had "a substantial interest in the outcome of the litigation." Id. Second, the non-party must have "substantially participate[d] in the proceedings in which he interfered." Id.

Cree asserts that under this test, the court can sanction Barson—he had a substantial interest in this litigation, and he has substantially participated in it. But this court is not bound by the Helmac decision. The decisions of district courts are not binding on other district courts. The court found only one case in this circuit which relied on the Helmac test—In re VII South Mich. Assoc., 175 B.R. 976, 984 (Bankr. N.D. Ill. 1994)—and in that case, esteemed bankruptcy judge John Schwartz declined to impose sanctions on the non-party. The court has been unable to find a Seventh Circuit case discussing a district court's use of its inherent authority to sanction non-parties, or even a district court case from within the Seventh Circuit.

Cree has reason to be frustrated; it has spent considerable money and time trying to serve BHP, and Barson has spent considerable time and effort trying to keep it from doing so. Reluctantly, however, the court concludes that it does not have inherent authority to sanction a non-party, regardless of how obstreperous that non-party has been.

      2.    *BHP*

In contrast, BHP *is* a party. Once Barson knew that Cree had filed the petition—by December 7, 2016 at the latest—BHP had reason to know that it had been named as a respondent. Regardless of what Barson's official title or role was with BHP, he was affiliated with it, and he knew full well that Cree

was trying to serve BHP. Barson has been in contact with Costello throughout this litigation, and was tracking it closely. Purportedly, there was a BHP board meeting on June 19 (five days after Judge Joseph telegraphed her intention to rule on the motion to serve by alternate means), at which Barson purportedly sold his shares; if that meeting took place, it cannot be a coincidence that it took place as Cree teetered on the cusp of effecting service on BHP. Barson had an email address (two, actually) affiliated with BHP; mysteriously, one of those was deactivated after Judge Joseph allowed Cree to serve BHP via that address. It had to be deactivated by someone affiliated with BHP. A security officer in the Mexico City office building where BHP was a tenant refused to allow the Cree representative and the court official into the building, despite a court order. When Cree and the court official returned to try again, the building directory suddenly wasn't operative.

The court finds that BHP actively tried to avoid service, abusing the judicial process and acting in bad faith. The court will grant Cree's motion for sanctions as to BHP, and will give Cree the opportunity to provide it with support for its monetary sanctions request.

## IV.    Conclusion

The court **GRANTS** Cree, Inc.'s motion for entry of default judgment against BHP Energy Mexico S. de R.L. de C.V. Dkt. No. 71.

The court **GRANTS** Cree, Inc.'s motion for entry of default judgment against BHP Energy Mexico S. de R.L. de C.V. Dkt. No. 79.

The court **ORDERS** that Judge Joseph's April 14, 2017 order, dkt. no. 27, as clarified by her May 23, 2017 order, dkt. no. 39, remains in full force and effect as to co-respondent BHB Energy, LLC.

The court **ENJOINS** BHP Energy Mexico S. de R.L. de C.V. from pursuing relief against Cree, Inc. in any litigation or court proceeding in Mexico arising out of or relating to the parties' distributorship relationship.

The court **ORDERS** that Cree, Inc. and BHP Energy Mexico S. de R.L. de C.V. shall proceed with arbitration in the manner provided for in the arbitration agreements.

The court **DENIES** Cree, Inc.'s motion to sanction Alan Barson. Dkt. No. 65.

The court **GRANTS** Cree, Inc.'s motion to sanction BHP Energy Mexico S. de R.L. de C.V. Dkt. No. 65.

The court **ORDERS** that on or before the end of the day on Friday, October 12, 2018, Cree, Inc. shall file an itemization supporting its request for damages relating to expenses incurred after December 7, 2016 in trying to serve BHP Energy Mexico S. de R.L. de C.V.

The court will issue a judgment after it enters a decision on the amount of sanctions.

Dated in Milwaukee, Wisconsin this 14th day of September, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**